UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TOM DEFOE, a minor by and through his parent and guardian, PHIL DEFOE, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No.: 3:06-CV-450 (VARLAN/GUYTON) |
| SID SPIVA, in his individual and official capacity as Principal of Anderson County Career and Technical School; MERL KRULL, in his individual and official capacity as Assistant Principal of Anderson County Vocational School; GREG DEAL, in his individual and official capacity as Principal of Anderson County High School; V. L. STONECIPHER, in his official capacity as Director of Schools for Anderson County; JOHN BURELL, in his official capacity as Chairman of the Anderson County School Board; and THE ANDERSON COUNTY SCHOOL BOARD, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Plaintiffs Tom Defoe, a junior at Anderson County High School, and his father Phil Defoe, brought a § 1983 suit alleging that defendants, Anderson County school officials and the Anderson County School Board, are violating plaintiffs' First and Fourteenth Amendment rights by prohibiting Tom Defoe from wearing clothing depicting the confederate battle flag.

This civil action is before the Court on Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Motion to Reconsider Motion for Summary Judgment [Doc. 72] and defendants' Motion for the Court to Reconsider Defendants Application for Summary Judgment [Doc. 112]. The Court has carefully considered the pending motions and responsive filings in light of the record as a whole and the applicable law. For the reasons set forth herein, both Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Motion to Reconsider Motion for Summary Judgment [Doc. 72] and defendants' Motion for the Court to Reconsider Defendants Application for Summary Judgment [Doc. 112] will be denied.

## I. Relevant Facts

At the time of the incidents giving rise to this case, Plaintiff Tom Defoe was a high school student who attended Anderson County High School and Anderson County Career and Technical Center. [Doc. 63 at 2.] All Anderson County schools have a dress code policy in effect which states in part:

> Clothing and accessories such as backpacks, patches, jewelry, and notebooks must not display (1) racial or ethnic slurs/symbols, (2) gang affiliations, (3) vulgar, subversive, or sexually suggestive language or images; nor, should they promote products which students may not legally buy; such as alcohol, tobacco, and illegal drugs.

[Doc. 63 at 7.]

On October 30, 2006, Tom Defoe wore a t-shirt to school bearing the image of the confederate battle flag. [Doc. 1 at ¶ 11; Doc. 14 at ¶ 12.] Anderson County High School officials informed Tom Defoe that his shirt violated the school's dress code policy, and he

2

was asked to remove the shirt or turn it inside out. [Doc. 1 at ¶ 11; Doc. 14 at ¶ 12.] Tom Defoe refused to comply. [Doc. 1 at ¶ 11; Doc. 14 at ¶ 12.] Plaintiffs assert that Tom Defoe was suspended in response to his refusal to comply, while defendants assert that he was merely sent home. [Doc. 1 at ¶ 11; Doc. 14 at ¶ 12.] On November 6, 2006, Tom Defoe wore a belt buckle depicting the confederate battle flag to school. [Doc. 1 at ¶ 12; Doc. 14 at ¶ 13.] Again, a school official informed Tom Defoe that his clothing violated the dress code policy and when Tom Defoe refused to comply with the dress code, he was suspended for insubordination. [Doc. 1 at ¶ 12; Doc. 14 at ¶ 13.] Prior to these two instances, Tom Defoe wore clothing depicting the confederate battle flag to school on several occasions but complied with requests to remove or cover the clothing. [Doc. 1 at ¶ 13; Doc. 14 at ¶ 14.]

Plaintiffs assert that there have been no disruptions to the learning environment caused by displays of the confederate flag and that school officials and teachers stated that it was unlikely that the confederate flag would cause a disruption at school. [Doc. 1 at ¶ 14; Doc. 50 at 6-7.] Defendants assert that there have been incidents of racial unrest, violence, and general disruption of school activities as a result of displays of the confederate battle flag. [Doc. 14 at ¶ 15.] Defendants cite testimony at the preliminary injunction hearing on January 30, 2007 describing racially-motivated incidents, at least one of which involved the confederate flag, in support of this assertion. [Doc. 63; *see also* Hr'g Tr., Jan. 30, 3007.] Plaintiffs assert Anderson County High School permits students to wear clothing bearing other expressions of political or controversial viewpoints, including images referring to Malcolm X, foreign national flags, and candidates for political office. [Doc. 1 at ¶ 15.]

Defendants deny that allegation. [Doc. 14 at ¶ 16.] Defendants plan to continue to enforce the dress code ban on displays of the confederate flag. [Doc. 1 at ¶ 17; Doc. 14 at ¶ 18.]

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III. Analysis**

**A. Free Speech**

While students do not "shed their constitutional rights to the freedom of speech or expression at the schoolhouse gate," students' rights to free speech are limited. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). School officials may regulate student speech which causes a material and substantial disruption to the learning environment. *Id.* at 509. In applying *Tinker*, "[t]he Court must consider the content and context of the speech, and the nature of the school's response." *Lowery v. Euverard*, 497 F.3d 584, 588 (6th Cir. 2007). While defendants question whether *Tinker* applies post-*Morse v. Frederick*, 127 S. Ct. 2618 (2007), *Morse* addressed whether schools can regulate speech that advocates drug use, and did not alter *Tinker*'s application here. *See also Lowery*, 497 F.3d at 596 (applying *Tinker* analysis post-*Morse*).

School officials do not have to wait for an actual disturbance to occur before they may regulate speech. *Tinker* does not require certainty that a disruption will occur, only a reasonable forecast of a substantial disruption. *Lowery*, 497 at 592 (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 767 (9th Cir. 2006). Regulation of speech is permissible if "it was reasonable for school officials 'to forecast a substantial disruption of or material interference with school activities.'" *Lowery*, 497 F.3d at 592 (citation omitted). In a similar case, the Sixth Circuit held that the school does not have to wait for a disruption

5

caused by displays of the confederate battle flag to occur, but can regulate displays if school officials can reasonably conclude that displays of the flag will lead to a disruption. *D.B. v. Lafon*, 217 Fed. App'x 518, 524-25 (6th Cir.2007); *see also Lowery*, 497 F.3d at 596 (discussing the disastrous effect of requiring school officials to wait for an actual disturbance to take place before acting).

Defendants assert that their forecast of a substantial disruption was reasonable because there had been several instances of racial hostility at Anderson County High School and Anderson County Career and Technical Center, at least one of which involved a display of the confederate flag. [*See, e.g.*, Doc. 63 at 11 (discussing display of confederate flag, the purpose of which, in defendant Deal's opinion, was to send a message that two new African-American students were not welcome at Anderson County High School); Doc. 63 at 10-12 (recalling instances of racial slurs reported by minority students); Doc. 63 at 12 (describing an incident at a basketball game when students threw Oreo cookies on the court when a biracial player entered the game).] Plaintiffs assert that defendants could not have reasonably forecasted a substantial disruption because they admit that displays of the confederate flag are not likely to cause a substantial disruption at their schools. [Doc. 50 at 6-7.] Because the determination of whether it was reasonable for defendants to forecast that plaintiff Tom Defoe's displays of the confederate flag would lead to a substantial disruption to the learning environment is material to the outcome, summary judgment cannot be granted in favor of either party on the issue of whether defendants' regulation violated plaintiffs' rights to free speech.

### B. Equal Protection

Plaintiffs contend that even if regulation of racially divisive speech is permissible at Anderson County High School and Anderson County Career and Technical Center, the prohibition of displays of the confederate flag at issue here is impermissible because it constitutes viewpoint discrimination. Plaintiffs are correct that *Police Department of City of Chicago v. Mosley* prohibits unjustified viewpoint discrimination. 408 U.S. 92 (1972); *see also D.B. v. Lafon*, 217 Fed. App'x at 523 (quoting *Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001)) ("[E]ven where past racial incidents justify a ban, schools may not impose 'a view-point specific ban on [some] racially divisive symbols and not others.'"). *Mosley* notes that the government may "prohibit[] some picketing to protect public order" as long as the prohibition meets a substantial government interest. 408 U.S. at 98-99. The *Mosley* Court recognizes that preventing a school disruption is a legitimate interest. *Id.* at 100. In determining whether some speech can be prohibited while other speech is permitted, "the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." *Id.* at 102.

One viewpoint may be regulated if it is shown that such a viewpoint is more disruptive than other viewpoints. *Mosley*, 408 U.S. at 102 (citing *Tinker*, 393 U.S. at 511; *Wirta v. Alameda-Contra Costa Transit Dist.*, 434 P.2d 982 ( Cal. 1967). While the *Mosley* court struck down the ordinance in question as unconstitutional, it can be distinguished because it banned some peaceful picketing while allowing other peaceful picketing. *See* 408 U.S. at 94. The court determined that it was unreasonable for school officials to determine that one

form of peaceful protesting could cause a substantial disruption while another form of peaceful protesting could not. *Id.* at 100-01. In *Castorina*, the Sixth Circuit, when viewing the facts most favorably to the students, found that permitting students to display symbols associated with Malcolm X but not the confederate flag was impermissible viewpoint discrimination in a situation in which there was no showing that disruption occurred as a result of the confederate flag displays. 246 F.3d at 542.

Here, the dress code facially prohibits all racially divisive symbols. [*See* Doc. 63 at 7 (providing dress code language).] Although plaintiffs contend that defendants' application of the dress code constitutes viewpoint discrimination because defendants do not prohibit all expressions of political opinion, [*see* Docs. 1; 50], defendants dispute this fact, [*see, e.g.*, Doc. 63 at 10 (Defendants Spiva and Deal have never seen any Malcolm X shirts at school); Doc. 63 at 10, 12 (summarizing sworn statements of defendants Spiva and Deal stating that they do not discriminate against any one political viewpoint)]. Defendants have also asserted that there were disruptions at Anderson County High School and Anderson County Career and Technical Center connected with displays of the confederate flag and that there were not similar disruptions connected to non-banned symbols. [Doc. 63.] Therefore, the circumstances in this case differ from those in *Mosley* and *Castorina* because there is a dispute as to whether the school banned all racially divisive and disruptive displays, thus applying the dress code in a viewpoint neutral manner, and therefore neither party is entitled to summary judgment on this issue.

### C. Qualified Immunity

Defendants argue that summary judgment should be granted in favor of the individual defendants on the basis that they are entitled to qualified immunity. The first step in determining if qualified immunity applies is to determine if, viewing the allegations in the light most favorable to plaintiffs, the facts show that defendants violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, the next step is to determine whether that right is clearly established. *Id.* If the court determines that the right is clearly established, qualified immunity does not shield the public officials from liability. *Id.*

Students do not "shed their constitutional rights to the freedom of speech or expression at the schoolhouse gate." *Tinker*, 393 U.S. at 506. Without a showing of a substantial and material disruption to the school environment or a reasonable forecast of such a disruption, a school cannot restrict a student's display of the confederate flag. *Lowery*, 497 F.3d at 562. Even upon showing of a disruption, the speech cannot be restricted in a viewpoint based manner. *D.B.*, 217 Fed. App'x at 523. As discussed above, plaintiff alleges that there have been no disruptions, it was not reasonable for defendants to forecast a disruption, and defendants' regulation of plaintiff Tom Defoe's speech was based upon his viewpoint. Viewing the facts in the light most favorable to the plaintiffs, for purposes of summary judgment plaintiffs can satisfy the first part of the qualified immunity analyses.

Turning to the second part of the qualified immunity inquiry, whether students have a clearly established right to free speech depends on the factual scenario. *See Morse v. Frederick*, 127 S. Ct. 2618 (2007) (permitting a restriction of student speech when the speech

is deemed to promote illegal drug use); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) (holding that school officials may restrict student speech in a school supported student newspaper); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986) (upholding a ban of lewd student speech); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) (holding that students have a right to wear armbands in protest of the Vietnam War where it could not be shown that this expression "materially and substantially disrupt[ed] the work and discipline of the school"); *Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001) (holding that a school ban of displays of the confederate battle flag was unconstitutional when there had not been any disruptions as a result of the confederate flag and students were permitted to wear other racially divisive symbols, including Malcolm X-inspired clothing); *see also Lowery v. Euverard*, 497 F.3d 584, 592 (6th Cir. 2007) (citation and quotations omitted) (noting that school officials do not have to wait for a disruption to occur but can regulate speech if "it was reasonable for school officials to forecast a substantial disruption of or material interference with school activities").

The facts necessary to determine whether this case fits into the scenario where a student's right to display the confederate flag is clearly established are in dispute. Plaintiffs allege that there have been no disruptions and defendants know that student displays of the confederate flag are not likely to cause a substantial disruption at Anderson County High School or Anderson County Career and Technical Center. [Doc. 71-2 at ¶ ¶ 15, 23.] Plaintiffs further allege that defendants do not apply the dress code in a viewpoint neutral manner. [Doc. 71-2 at ¶ 16.] Defendants allege that substantial disruptions have occurred

10

related to race and displays of the confederate flag. [Doc 63.] Additionally, defendants contend that they do not engage in viewpoint discrimination. [Doc. 63 at 10, 12.] Because these facts are in dispute, the Court cannot grant summary judgment to the individual defendants on the basis of qualified immunity.

**IV.   Conclusion**

For the reasons set forth herein, Plaintiffs' Motion and Memorandum of Points and Authorities in Support of Motion to Reconsider Motion for Summary Judgment [Doc. 72] is hereby **DENIED** and defendants' Motion for the Court to Reconsider Defendants Application for Summary Judgment [Doc. 112] is hereby **DENIED**.

IT IS SO ORDERED.

    s/ Thomas A. Varlan
    UNITED STATES DISTRICT JUDGE