UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TOM DEFOE, a minor by and through his parent and guardian, PHIL DEFOE, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No.: 3:06-CV-450 (VARLAN/SHIRLEY) |
| SID SPIVA, *et al.*, ) ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This civil action is before the Court on Plaintiffs' Motion for Preliminary Injunction Pending Appeal [Doc. 147] and Plaintiffs' Fourth Motion for Preliminary Injunction [Doc. 150]. Plaintiffs seek an order prohibiting defendants from enforcing their prohibition of displays of the Confederate flag at Anderson County High School. Defendants have filed a response in opposition to each motion [Doc. 148; Doc. 163], and plaintiffs have replied to defendants' responses [Doc. 149; Doc. 167; *see also* Doc. 219]. Because the appeal in this case has been dismissed [*see* Doc. 170], Plaintiffs' Motion for Preliminary Injunction Pending Appeal [Doc. 147] is moot and will be denied as such. The Court has considered the merits of Plaintiffs' Fourth Motion for Preliminary Injunction [Doc. 150], including the arguments incorporated by reference to other motions, and for the reasons discussed herein, it will be denied.

## I. Relevant Facts

Plaintiff Tom Defoe was a high school student who attended Anderson County High School and Anderson County Career and Technical Center until at least December 20, 2007. [Doc. 63 at 2; Doc. 196.] All Anderson County schools have a dress code policy in effect which states in part:

> Clothing and accessories such as backpacks, patches, jewelry, and notebooks must not display (1) racial or ethnic slurs/symbols, (2) gang affiliations, (3) vulgar, subversive, or sexually suggestive language or images; nor, should they promote products which students may not legally buy; such as alcohol, tobacco, and illegal drugs.

[Doc. 63 at 7.]

On October 30, 2006, Tom Defoe wore a t-shirt to school bearing the image of the confederate flag. [Doc. 130 at ¶ 12; Doc. 177 at ¶ 13.] Anderson County High School officials informed Tom Defoe that his shirt violated the school's dress code policy, and he was asked to remove the shirt or turn it inside out. [Doc. 130 at ¶ 12; Doc. 177 at ¶ 13.] Tom Defoe refused to comply. [Doc. 130 at ¶ 12; Doc. 177 at ¶ 13.] Plaintiffs assert that Tom Defoe was suspended in response to his refusal to comply, while defendants assert that he was merely sent home. [Doc. 130 at ¶ 12; Doc. 177 at ¶ 13.] On November 6, 2006, Tom Defoe wore a belt buckle depicting the confederate flag to school. [Doc. 130 at ¶ 13; Doc. 177 at ¶ 14.] Again, a school official informed Tom Defoe that his clothing violated the dress code policy and when Tom Defoe refused to comply with the dress code, he was suspended for insubordination. [Doc. 130 at ¶ 13; Doc. 177 at ¶ 14.] Prior to these two instances, Tom Defoe wore clothing depicting the confederate battle flag to school on several

occasions but complied with requests to remove or cover the clothing. [Doc. 130 at ¶ 14; Doc. 177 at ¶ 15.]

Plaintiffs assert that there have been no disruptions to the learning environment caused by displays of the confederate flag and that school officials and teachers stated that it was unlikely that the confederate flag would cause a disruption at school. [Doc. 50 at 6-7; Doc. 130 at ¶ 15.] Defendants assert that there have been and continue to be incidents of racial unrest, violence, and general disruption of school activities as a result of displays of the confederate battle flag. [*See e.g.*, Doc. 14 at ¶ 15; Doc. 200-2; Doc. 200-4; Doc. 200-7.]

Plaintiffs assert that Anderson County High School permits students to wear clothing bearing other expressions of political or controversial viewpoints, including images referring to Malcolm X, foreign national flags, and candidates for political office. [Doc. 130 at ¶ 16.] Defendants deny this allegation and state that at most plaintiffs' allegations show that a student "got away" with wearing a Malcolm X shirt. [Doc. 196 at 2.] Defendants assert that this does not show that Anderson County Schools, its Board, or any staff member approved of the shirt. [*Id.*] In a sworn affidavit, defendant Merl Krull states that he has never seen any students wearing a Malcolm X shirt and that, "I have not and would not allow other students to wear Malcolm X t-shirts or any other potentially racially divisive symbols which could be deemed contrary to any view which may be expressed by the confederate flag. In other words, I enforce the dress code policy evenhandedly." [Doc. 200-3.]

## II. Analysis

### A. Standard for Relief

A party seeking a temporary restraining or preliminary injunction order bears the burden of establishing four factors, which the Court must balance: (1) irreparable harm to movant if such an order is not entered; (2) likelihood of harm to others if such an order is entered; (3) movant's substantial likelihood of success on the merits; and (4) the impact on the public interest by entry of such an order. *See Nightclubs, Inc. v. City of Paducha*, 202 F.3d 884, 887 (6th Cir. 2000); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (citing *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996), *cert. denied*, 519 U.S. 807 (1996)).

When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits factor is often determinative. *Connection Distrib. Co.*, 154 F.3d at 288. With regard to the irreparable harm factor, courts have long recognized that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality), *quoted in Connection Distrib. Co.*, 154 F.3d at 288. Therefore, to the extent a plaintiff can establish a substantial likelihood of success on the merits on a First Amendment claim, that plaintiff has also established the possibility of irreparable injury. *See Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995), *quoted in Connection Distrib. Co.*, 154 F.3d at 288. The same is true with regard to the public interest factor, because the public interest always lies with protection of a party's

constitutional rights. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *see also Fisher*, 70 F.3d at 1490. Furthermore, an examination of harm to the parties also requires a consideration of the merits, since the harm to a party resulting from imposition of an injunction is related to whether the conduct subject to the injunction is unconstitutional. *See Connection Distrib. Co.*, 154 F.3d at 288. In this case, for the reasons just discussed, the likelihood of success on the merits factor is determinative, and consideration of that factor will be the focus of the remainder of this discussion.

### B. Viewpoint Discrimination

Plaintiffs argue that the Court has not addressed their claim of viewpoint discrimination. Contrary to plaintiffs' contention, the Court fully discussed the issue of viewpoint discrimination in its ruling on plaintiffs' motion to reconsider motion for summary judgment. [*See* Doc. 128.]

In their motion to reconsider motion for summary judgment, plaintiffs relied upon *Police Department of City of Chicago v. Mosley*, 408 U.S. 92 (1972). [Doc. 73; *see also* Doc. 66.] Accordingly, the Court focused its consideration of plaintiffs' motion on the application of *Mosley* to the present case. *Mosely* states that one viewpoint may be regulated if it is shown that such a viewpoint is more disruptive than other viewpoints. *Mosley*, 408 U.S. at 100 (citing *Tinker*, 393 U.S. at 511; *Wirta v. Alameda-Contra Costa Transit Dist.*, 434 P.2d 982 (Cal. 1967)). Any regulation must be narrowly tailored to meet the legitimate objective that permits the regulation. *Mosley*, 408 U.S. at 101.

5

Defendants assert that there have been and continue to be disruptions at Anderson County High School and Anderson County Career and Technical Center connected with displays of the confederate flag and that there were not similar disruptions connected to non-banned symbols. Accordingly, whether the display of the confederate flag is more disruptive than other viewpoints is a material issue in dispute. Additionally, on the undisputed facts, plaintiffs have not shown that defendants' regulations were not narrowly tailored. Plaintiffs and defendants agree that defendants' prohibition applies to all displays of the confederate flag. Thus, whether defendants reasonably forecasted a disruption in connection with all displays of the confederate flag is a material issue.

Plaintiffs, apparently dissatisfied with the Court's previous ruling on the issue of viewpoint discrimination, now change the basis of their argument and rely upon *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37 (1983), in support of their claim of viewpoint discrimination. Despite their efforts to revive their argument by citing different case law and claiming that the Court has not addressed the issue, as discussed below, plaintiffs still have not shown a likelihood of success on the merits.

*Perry* states that, "Once the government permits discussion on certain subject matter, it may not impose restrictions that discriminate among viewpoints on those subjects." *Id.* at 61-62. Accordingly, even when a school is permitted to ban a certain expression because the school reasonably forecasts that the expression will cause a substantial disruption of school activities, the ban must be viewpoint neutral. *See id.*; *Castorina v. Madison County Sch. Bd.*, 246 F.3d 536, 543-44 (6th Cir. 2001); *see also Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,

393 U.S. 503, 513 (1969); *Lowery v. Euverard*, 497 F.3d 584, 592 (6th Cir. 2007) (noting that school officials do not have to wait for a disruption to occur but can regulate speech if "it was reasonable for school officials to forecast a substantial disruption of or material interference with school activities"). As discussed in the Court's opinion denying plaintiffs' second motion for a preliminary injunction [Doc. 60], plaintiffs have not demonstrated a likelihood of success on their claim that defendants did not reasonably forecast such a disruption.[1] Accordingly, the Court will focus its discussion on whether defendants' ban on displays of the confederate flag constitutes viewpoint discrimination.

Plaintiffs argue that defendants' ban of racially divisive symbols but allowance of racially inclusive symbols constitutes viewpoint discrimination. In making this argument plaintiffs are defining the subject matter upon which the defendants have allowed discussion as race in general. However, the Sixth Circuit has considered viewpoint neutrality across the category of racial divisiveness, rather than the broader category of race in general, when determining whether a policy is a permissible limitation on speech. *See Perry*, 460 U.S. at 61-62; *Castorina*, 246 F.3d at 543-44 ("[A] school board may ban racially divisive symbols when there has been actual racially motivated violence and when the policy is enforced without viewpoint discrimination."). Specifically, the Sixth Circuit has determined that the requirement that restrictions on student speech be viewpoint neutral means that defendants

---

[1] Plaintiffs have not presented any new evidence or arguments since the Court's determination of plaintiffs' second motion for a preliminary injunction. Instead, plaintiff's rely upon Greg Deal's deposition which was submitted in support of plaintiffs' second motion for preliminary injunction [Doc. 50-13] and previously considered by the Court. Accordingly, the Court will not reconsider its prior holding on this issue now.

7

cannot ban displays of some racially divisive symbols and not others. *Castorina*, 246 F.3d at 544.

The corollary to plaintiffs' argument is that a school cannot prohibit discussions of racial inclusiveness unless it also bans discussions of racial divisiveness. This premise is inconsistent with the Supreme Court's First Amendment jurisprudence as it relates to students. Because school officials may only regulate student speech which causes or is reasonably forecasted to cause a material and substantial disruption to the learning environment, schools cannot regulate racially inclusive speech if it is nondisruptive or there is no reasonable forecast of a disruption. *See Tinker*, 393 U.S. at 509; *Lowery*, 497 F.3d at 592. However, school officials may regulate racially divisive speech if it causes a disruption or is reasonably forecasted to cause a disruption. *See Tinker*, 393 U.S. at 509; *Lowery*, 497 F.3d at 592. Thus, the permissible regulation of one expression related to race does not allow school officials to regulate all expressions related to race.

In a recent decision in a pure student speech case, the Supreme Court held that school officials may ban speech that they reasonably believe promotes illegal drug use. *Morse v. Frederick*, 127 S.Ct. 2618, 2625 (2007).[2] According to the logic plaintiffs urge the Court to employ here, the *Morse* ruling would require that schools ban discussion *dis*couraging illegal drug use. To the contrary, the *Morse* Court recognized that one of the reasons for banning

---

[2]Though the *Morse* Court did not analyze the school's ban on the student's sign under the *Tinker* substantial disruption framework as the Court has applied in this case, it is relevant to plaintiffs' viewpoint discrimination claim.

8

speech advocating illegal drug use is that "part of a school's job is educating students about the dangers of illegal drug use." *Id.* at 2628. The Supreme Court determined that regulation of speech on the basis that it advocates illegal drug use is not viewpoint discrimination. *Id.* at 2629 (recognizing Justice Stevens' dissenting opinion but disagreeing with it); *see also id.* at 2645-46 (Stevens, J., dissenting).

Additionally, as plaintiffs have noted, regulations "affecting First Amendment interests [must] be narrowly tailored to their legitimate objectives." *Mosley*, 408 U.S. at 101 (citations omitted). Because the legitimate objective alleged by defendants is to prevent school disruptions, defendants must limit their regulations to speech reasonably forecasted to cause a disruption in order to narrowly tailor their restraint on speech. Defendants have asserted facts that suggest that the display of racially divisive symbols can be reasonably forecasted to cause a substantial disruption. There has been no allegation that racially inclusive symbols and discussions would cause any disruption. Accordingly, plaintiffs' argument is inconsistent with the requirement that any restriction on speech be narrowly tailored.

In sum, a school cannot permit discussion of some racially divisive issues and not others, but there is no requirement that a school allow racially divisive speech simply because it allows racially inclusive speech. Thus, defendants' allowance of expressions of opinion promoting racial equality, tolerance, diversity, and cultural equalities does not mean that they must allow racially divisive expressions.

9

Though plaintiffs' argument for viewpoint discrimination on the basis that defendants permitted racially inclusive expression fails, plaintiffs can still be successful in their claim of viewpoint discrimination if they demonstrate that school officials discriminate between different disruptive racially divisive expressions. The *Castorina* court made it clear that "the school board cannot single out Confederate flags for special treatment while allowing other controversial racial and political symbols to be displayed." 246 F.3d at 542. Plaintiffs have previously argued that defendants permit students to wear clothing bearing other expressions of political or controversial viewpoints, including images referring to Malcolm X, foreign national flags, and candidates for political office. [Doc. 130 at ¶ 16.] Defendants deny this allegation and have presented affidavits of school officials with direct knowledge that support their position. [Doc. 196 at 2; Doc. 200-3.] Other than plaintiffs' conclusory statement, there is no indication that defendants have enforced the ban on racially divisive symbols in a manner that discriminates for or against certain viewpoints. Accordingly, plaintiffs have not met the high burden of showing a likelihood of success on their argument that defendants' ban on displays of the confederate flag is impermissible viewpoint discrimination.

## III. Conclusion

For the reasons discussed herein, plaintiffs have not presented evidence sufficient to establish a substantial likelihood of success on the merits. Accordingly, Plaintiffs' Fourth Motion for Preliminary Injunction [Doc. 150] is hereby **DENIED**. Because the appeal in this

case has been dismissed [*see* Doc. 170], Plaintiffs' Motion for Preliminary Injunction Pending Appeal [Doc. 147] is hereby **DENIED as moot**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE