UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| TOM DEFOE, a minor by and through his parent and guardian, PHIL DEFOE, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No.: 3:06-CV-450 (VARLAN/SHIRLEY) |
| SID SPIVA, *et al.*, ) ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

This civil action is before the Court on Defendants' Motion for Partial Summary Judgment [Doc. 178; *see also* Doc. 179] and Defendants' Motion for Summary Judgment [Doc. 195; *see also* Doc. 196]. Plaintiffs responded in opposition to each motion [Docs. 201, 211], defendants filed a reply [Doc. 210], and plaintiffs filed a sur-reply [Doc. 222]. Thus, this matter is now ripe for determination. The Court has carefully considered the pending motions, along with the parties' briefs, affidavits, and other relevant filings. For the reasons set forth herein, Defendants' Motion for Partial Summary Judgment [Doc. 178] will be granted in part and denied in part, and Defendants' Motion for Summary Judgment [Doc. 195] will be denied.

**I.     Relevant Facts**

Plaintiff Tom Defoe was a high school student who attended Anderson County High School and Anderson County Career and Technical Center until at least December 20, 2007.

[Doc. 63 at 2; Doc. 196.] All Anderson County schools have a dress code policy in effect which states in part:

> Clothing and accessories such as backpacks, patches, jewelry, and notebooks must not display (1) racial or ethnic slurs/symbols, (2) gang affiliations, (3) vulgar, subversive, or sexually suggestive language or images; nor, should they promote products which students may not legally buy; such as alcohol, tobacco, and illegal drugs.

[Doc. 63 at 7.]

On October 30, 2006, Tom Defoe wore a t-shirt to school bearing the image of the confederate flag. [Doc. 130 at ¶ 12; Doc. 177 at ¶ 13.] Anderson County High School officials informed Tom Defoe that his shirt violated the school's dress code policy, and he was asked to remove the shirt or turn it inside out. [Doc. 130 at ¶ 12; Doc. 177 at ¶ 13.] Tom Defoe refused to comply. [Doc. 130 at ¶ 12; Doc. 177 at ¶ 13.] Plaintiffs assert that Tom Defoe was suspended in response to his refusal to comply, while defendants assert that he was merely sent home. [Doc. 130 at ¶ 12; Doc. 177 at ¶ 13.] On November 6, 2006, Tom Defoe again wore depiction of the confederate flag to school, this time on a belt buckle. [Doc. 130 at ¶ 13; Doc. 177 at ¶ 14.] Again, a school official informed Tom Defoe that his clothing violated the dress code policy and when Tom Defoe refused to comply with the dress code, he was suspended for insubordination. [Doc. 130 at ¶ 13; Doc. 177 at ¶ 14.] Prior to these two instances, Tom Defoe wore clothing depicting the confederate battle flag to school on several occasions but complied with requests to remove or cover the clothing. [Doc. 130 at ¶ 14; Doc. 177 at ¶ 15.]

Plaintiffs assert that there have been no disruptions to the learning environment caused by displays of the confederate flag and that school officials and teachers stated that it was unlikely that the confederate flag would cause a disruption at school. [Doc. 50 at 6-7; Doc. 130 at ¶ 15.] Defendants assert that there have been and continue to be incidents of racial unrest, violence, and general disruption of school activities as a result of displays of the confederate flag. [*See e.g.*, Doc. 14 at ¶ 15; Doc. 200-2; Doc. 200-4; Doc. 200-7.]

Plaintiffs assert that Anderson County High School permits students to wear clothing bearing other expressions of political or controversial viewpoints, including images referring to Malcolm X, foreign national flags, and candidates for political office. [Doc. 130 at ¶ 16.] Defendants deny this allegation and state that, at most, plaintiffs' allegations show that a student "got away" with wearing a Malcolm X shirt. [Doc. 196 at 2.] Defendants assert that this does not show that Anderson County Schools, its Board, or any staff member approved of the shirt. [*Id.*]

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.*, 475 U.S.

at 587; *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.* To defeat a motion for summary judgment, the opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**III. Analysis**

    **A. Mootness**

Defendants argue that summary judgment should be entered in their favor on plaintiffs' claims for declaratory and injunctive relief because those claims have been mooted as a result of plaintiff Tom Defoe's withdrawal from school. Pursuant to the case or controversy requirement of Article III of the Constitution, this Court does not have the power to consider an issue that is moot. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Lawrence v. Blackwell*, 430 F.3d 368, 370 (6th Cir. 2005) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979); *Chirco v. Gateway Oaks*, 384 F.3d 307, 309 (6th Cir.2004)). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *Ford v. Wilder*, 469 F.3d 500, 503 (6th Cir. 2006) (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir 2006)). Mootness can bar judicial resolution of an issue at any stage of the litigation. *Lawrence*, 430 F.3d at 371.

Plaintiff Tom Defoe ceased enrollment at Anderson County High School on December 20, 2007. Defendants argue that plaintiffs' claims for declaratory and injunctive relief are mooted by the fact that Tom Defoe no longer attends classes at Anderson County High School. [Doc. 179.] Defendants cite three cases holding that a student's claim is mooted by his or her graduation. [*Id.* (citing *Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 218 (3d Cir. 2003); *Mellen v. Bunting*, 327 F.3d 355, 364-65 (4th Cir. 2003); *Doe*

5

*v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999).] However, none of the cases cited by defendants are applicable here.

Instead, *Washegesic v. Bloomingdale Public Schools*, 33 F.3d 679 (6th Cir. 1994), is applicable. In *Washegesic*, the Sixth Circuit considered whether a former student's claim that a portrait of Jesus displayed in the school building violated the Establishment Clause was mooted by the fact that he graduated. *Id.* The court distinguished the situation before it from cases in which the students ceased to have an interest in the challenged policy finding that the *Washegesic* student continued to suffer an injury because he still visited the school. *Id.* at 681. The court noted that "the portrait of Jesus affects students and non-students alike." *Id.*

Here, as in *Washegesic*, plaintiff Tom Defoe still has reason to visit Anderson County High School despite no longer being a student. Though he permanently withdrew from classes as of December 20, 2007, Tom Defoe visited the school on May 6, 2008 to take the Gateway Algebra I test that is required for his graduation. Plaintiffs assert that Tom Defoe may need to return to the school in order to retake the Gateway test or to obtain his school records for as long as they are maintained at the school. The fact that Tom Defoe is not required to pass the Gateway test and will receive a Certificate of Completion without it does not change the Court's analysis. The plaintiff in *Washegesic* was not required to be at the school but instead chose to be there to attend sporting events, dances, and other social functions. *Id.*

6

When Tom Defoe visited the school on May 6, 2008, he was informed that the dress code still applied to him regardless of the fact that he was no longer a student. Because Tom Defoe will apparently be subject to the dress code on any future visits to the school, he has an ongoing case or controversy that has not been mooted by his withdrawal from school.

Additionally, plaintiffs' claims seeking removal of information related to Tom Defoe's discipline related to violations of the dress code from his record are not moot regardless of plaintiffs' visits to the school. In *Flint v. Dennison*, the Ninth Circuit considered the mootness of a graduate's claims for declaratory relief that his university's limits on student senate campaign expenditures violated his free speech rights, an injunction preventing the school from removing him from his elected senate position, and an injunction ordering the school to expunge all references to his censure and senate seat denial in his record. 488 F.3d 816, 824 (9th Cir. 2007). Recognizing that a student's claim requesting declaratory or injunctive relief from the school's policies usually becomes moot upon his graduation, the court stated,

> When a student's record contains negative information derived from allegedly unconstitutional school regulations, however, that information may jeopardize the student's future employment or college career. So long as a former student's record contains evidence of disciplinary sanctions, and the former student seeks 'an order requiring school officials to expunge from school records all mention of the disciplinary action,' the action is not moot.

*Id.* (quoting *Hatter v. L.A. City High Sch. Dist.*, 452 F.2d 673, 674 (9th Cir.1971)). The *Flint* court found that plaintiff's claims were not moot despite his graduation due to his request that his record be expunged. 488 F.3d at 824.

Plaintiffs specifically request "expungement of any references to any disciplinary action in the Plaintiffs' [sic] records relating to their wearing items bearing the flag, or otherwise displaying confederate symbols." [Doc. 130.] Because plaintiff Tom Defoe continues to have a reason to visit Anderson County High School and will be subject to the dress code when he does, and because plaintiffs request that his record be expunged, plaintiffs' claims are not moot.

### B. Qualified Immunity

Defendants argue that the individual defendants are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity does not shield public officials from liability for violating constitutional rights which are clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first step in determining if qualified immunity applies is to determine if, viewing the allegations in the light most favorable to plaintiffs, the facts show that defendants violated a constitutional right. *Id.*. If so, the next step is to determine whether that right is clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [person] that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). If the court determines that the right is clearly established, qualified immunity

does not shield the public officials from liability. *Saucier*, 533 U.S. at 202. In *Saucier*, the Court considered the reasonableness of a police officer's use of force stating:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.* at 205.

In the realm of student speech, it is clear that a school cannot regulate student speech that is not obscene or offensive, does not advocate illegal drug use, or is not sanctioned by the school, unless the speech causes or is reasonably forecasted to cause a material and substantial disruption to the learning environment. *See Morse v. Frederick*, 127 S. Ct. 2618 (2007) (permitting a restriction of student speech when the speech is deemed to promote illegal drug use); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988) (holding that school officials may restrict student speech in a school supported student newspaper because it bears the school's imprimatur); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986) (upholding a ban of lewd student speech); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) (holding that students have a right to wear armbands in protest of the Vietnam War where it could not be shown that this expression "materially and substantially disrupt[ed] the work and discipline of the school").

Plaintiffs argue that the Court has already decided this issue in regard to defendants Krull, Deal, and Spiva, and should decline to reconsider its prior ruling now. Plaintiffs are correct that the Court previously found, based upon the undisputed facts, summary judgment in favor of Krull, Deal, and Spiva on the issue of qualified immunity was inappropriate. [*See* Doc. 128.] Each of those defendants personally regulated Tom Defoe's wearing of the confederate flag. There is a dispute as to whether Krull, Deal, and Spiva reasonably forecasted a substantial disruption. The Supreme Court clearly established the substantial disruption standard in *Tinker* in 1969. The Court will not revisit its ruling on qualified immunity in regard to defendants Krull, Deal, and Spiva.

Because V.L. Stonecipher and John Burell were named in their individual capacities for the first time after the Court previously addressed defendants' motion for summary judgment on the basis of qualified immunity, the Court will address defendants' motion as to those defendants now. V.L. Stonecipher is the current director of schools for Anderson County. He does not personally know plaintiff Tom Defoe and there are no allegations that he personally had any encounter with plaintiffs or did anything to infringe upon plaintiffs' constitutional rights. Accordingly, V.L. Stonecipher is entitled to qualified immunity in his individual capacity.

John Burell is currently the Chairman of the Anderson County School Board. Tom Defoe does not know Dr. Burell. Despite Dr. Burell's beliefs that the confederate flag is banned to avoid offending some students and his admission that he does not know the constitutional limits on the Board's power to restrain student speech, there are no allegations

10

that he violated any of plaintiff's constitutional rights by personally restraining his speech. Accordingly, Dr. Burell is entitled to qualified immunity in his individual capacity.

### C. Punitive Damages

Defendants argue that plaintiffs cannot recover punitive damages. Punitive damages cannot be awarded against a local government entity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). However, a plaintiff can recover punitive damages in a § 1983 case from an individual defendant if it is shown that the defendant engaged in behavior that was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *accord Parker v. General Extrusions, Inc.*, 491 F.3d 596, 602 (6th Cir. 2007). The Sixth Circuit has interpreted the standard to mean that a defendant's wrongful conduct warrants punitive damages if it was "grossly negligent, intentional, or malicious." *Hill v. Marshall*, 962 F.2d 1209, 1217 (6th Cir. 1992) (citing *Lewis v. Downs*, 774 F.2d 711, 715 (6th Cir.1985)).

Plaintiffs have alleged facts in support of the allegation that defendants Krull, Deal, and Spiva knew that displays of the confederate flag did not cause likelihood of a substantial disruption in the school environment, but that they intentionally prohibited Tom Defoe from wearing depictions of the confederate flag anyway. Such an allegation, if true, supports the notion that defendants violated plaintiffs' rights with reckless indifference to federal law. Although, defendants dispute this fact, the Court will not determine this factual issue on a

motion for summary judgment. Accordingly, the Court does not find that defendants are entitled to summary judgment on the issue of punitive damages.

**D.      Legislative Immunity**

Because the Court found that Dr. Burell is entitled to qualified immunity, it need not address whether he is entitled to legislative immunity.

**E.      Timeliness**

In their second motion for summary judgment now before the Court [Doc. 195, *see also* Doc. 196], defendants argue that because the confederate flag can be a racially divisive symbol, it can be banned from a school district that has a history of racially motivated incidents as long as the ban is viewpoint neutral. Defendants assert that there have been racially motivated incidents at Anderson County High School and Anderson County Career and Technical Center. Defendants further argue that plaintiffs have not presented any evidence that the ban is enforced in a viewpoint discriminatory manner and thus the regulation of plaintiffs' speech is constitutional. Plaintiffs correctly respond that this motion is untimely. The Court issued a scheduling order in this case [Doc. 32], establishing the deadline for all dispositive motions. This deadline has passed. Although the Court has addressed some of defendants' arguments in support of summary judgment despite the expired deadline, the Court did so because they related to new claims raised by plaintiffs. However, defendants' second motion for summary judgment addresses issues that plaintiffs asserted when they originally filed this case and that the Court has already addressed.

Accordingly, the Court will not address the merits of this motion and will deny it as untimely.

**IV. Conclusion**

For the reasons set forth herein, Defendants' Motion for Partial Summary Judgment [Doc. 178] is hereby **GRANTED in part** in regard to qualified immunity for V.L. Stonecipher and John Burell in their individual capacities and **DENIED in part** in regard to all of defendants' other asserted grounds. Accordingly, plaintiffs' claims against V.L. Stonecipher and John Burell in their individual capacities are hereby **DISMISSED**. Additionally, Defendants' Motion for Summary Judgment [Doc. 195] is hereby **DENIED** as untimely.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE